■ In the Matter of UNION FREE SCHOOL DISTRICT No. 2 OF THE TOWN OF CHEEKTOWAGA et al., Appellants-Respondents, v. EWALD B. NYQUIST, as Commissioner of Education of the State of New York, Respondent, and RICHARD BIEBER et al., on Behalf of Themselves and All Others Similarly Situated, et al., Respondents-Appellants.— Cross appeals from a judgment of the Supreme Court at Special Term, entered April 27, 1972 in Albany County, which affirmed in part and annulled in part a decision of the Commissioner of Education. Prior to May 1, 1967, the respondent-appellant teachers had been granted "transfer credit" when initially hired by the petitioner school district. On May 1, 1967 the teachers and the school district board entered into a collective bargaining agreement effective to June 30, 1969. On June 11, 1968 the agreement was amended to include longevity increments based upon years of service in the petitioner school district. Subsequently, those teachers who had been granted transfer credit demanded the payment of longevity payments ($250 per year) and the school board refused, saying transfer credits applied only to starting base salaries and not to longevity increments. The Commissioner of Education sustained their appeal and ordered the board to pay longevity increments for the 1968–69, 1969–70 school years and in the future, basing his decision on subdivisions 2 and 4 of section 3101

and subdivision 6 of section 3102 of the Education Law. Under subdivision 6 of section 3102, school authorities are given discretion in granting the transfer credit, but once granted, transfer credits cannot be revoked. Subdivision 4 of section 3010 defines a transfer credit as credit given a teacher for years of service outside the school district and subdivision 2 defines years of service as the number of years a teacher has served in the school district in which he is employed. Reading these three statutes together, the Commissioner held that once the school board granted transfer credit, the grant was irrevocable. Thus, years of service outside the district became the same as in-district service under the collective bargaining agreement entitling teachers to longevity increments. The Board of Education then commenced this article 78 proceeding to annul the Commissioner's determination. Special Term dismissed the petition upon the ground that the determination was not purely arbitrary and was, therefore, final. However, when it was revealed that effective April 12, 1971, subdivision 6 of section 3102 of the Education Law was repealed, Special Term then permitted reargument and modified its decision. It held that longevity increments after the date of repeal no longer had any statutory basis, and, consequently, the Commssioner's determination which ordered future payments was purely arbitrary. The increments granted for 1968–69 and 1969–70 were reaffirmed. Special Term based its decision upon the ground that the determination of the Commissioner of Education was erroneous as a matter of law, and, therefore, arbitrary. It reached this conclusion by virtue of a strained construction of the effect of the repeal of subdivision 6 of section 3102 of the Education Law, holding that the grant of longevity increments no longer had any *statutory* basis. Prior to its repeal, that section read as follows: "6. The school authorities may grant transfer credit to a teacher in their discretion, provided, however, that such authorities shall not thereafter have the power to revoke any such grant heretofore or hereafter made to a teacher, and provided, further, that any year of transfer credit so granted shall be counted as a year of service in the district." The first portion of the statute can be read as a permissive grant of authority to school districts to grant transfer credits to teachers, but, in our view, it was nothing more than a codification of a power which resided in school authorities prior to its enactment. The grant or denial of transfer credits was not prohibited prior to the enactment of subdivision 6; rather, it was a matter which was a proper subject of contract negotiations between local boards and their teachers. This conclusion is buttressed by the fact that subdivision 4 of section 3101, which defines "transfer credit", was not repealed. If such credits could not be granted except where expressly permitted by statute, the retention of the definition in the statute would have been unnecessary. Judicial notice is taken of the fact that school boards in various localities throughout the State continue to grant such credits, and, in view of the often acrimonious contract disputes between school districts and teachers in recent years, such credits certainly would not be granted if negotiators for the school districts could arguably contend that they were without legal authority to do so. It must, therefore, be concluded that subdivision 6 made a substantive change only insofar as it deprived school authorities of the power to revoke credits once granted. Thus, the decision to grant credits remained in the employer's discretion, but once granted, such credits could not be revoked. With the subsequent repeal of the statute, school boards are again restored to a position where they can grant revocable transfer credits. However, to go further and hold that the repealer allows school boards to revoke credits *previously earned and granted,* even though such credits were granted under the umbrella of a protective statute, would give the repealer a retro-

active application which the Legislature could not have intended. If it is determined that credits *earned and granted* during the period when subdivision 6 was in effect are not vested rights, then the beneficial effects of that statute would be wiped out and all such credits could be canceled as if the statute had never existed. It is necessary to cite only one example to demonstrate that such an effect was not intended. A teacher with many years' experience who, on the date of repeal, had achieved the highest salary level in the school system in which he or she was then employed, by virtue of both longevity with that employer and transfer credits which had been granted on or after the effective date of subdivision 6, would suffer a reduction in salary if such credits were revoked. Certainly the Legislature could not have desired such a result. To assert that no one has a vested interest in any rule of law which entitles him to have the rule remain unaltered does not change the result, nor is such a position out of harmony with our analysis. Indeed, the rule of law may be and has been changed — with the effect that credits granted after the repeal of subdivision 6 will be subject to subsequent revocation. It is thus apparent that a determination could have been made by the Commissioner in harmony with the statutory scheme as amended. In view of the limited scope of judicial review of the decisions of the Commissioner of Education (Education Law, § 3101; *Matter of Board of Educ. of City of N. Y. v. Allen,* 6 N Y 2d 127), it would have been appropriate for Special Term to have remanded the matter to the Commissioner who is given responsibility for the adoption of policies and interpretations, which cannot be disturbed unless clearly prohibited by law. Special Term could not properly reject as arbitrary an administrative determination made prior to legislative action without first giving the administrator an opportunity to respond to that action. We do note, however, that the Commissioner's determination did contain an ambiguity which would warrant clarification. In stating that respondent was "directed in the future to include transfer credit in its determinations as to which of its teachers are entitled to payment of longevity increments", the Commissioner does not indicate whether he meant "future" to apply to recognition of credits previously earned and previously granted, or to grants of additional credits not yet earned. Since, as indicated, the most desirable procedure would be a redetermination by the Commissioner in light of the statutory change, he should also be given an opportunity upon remand to clarify this ambiguity. Judgment reversed, on the law, without costs, and matter remitted to the Commissioner of Education for further proceedings not inconsistent herewith. Staley, Jr., J. P., Greenblott, Sweeney, Kane and Main, JJ., concur.